UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **HENRY NELSON,** | } |
| Plaintiff, | } |
| v. | } Case No.: 2:14-cv-00112-RDP |
| **NORTHLAND INSURANCE COMPANY,** | } |
| Defendant. | } |

## MEMORANDUM OPINION

This matter is before the court on (1) Defendant/Garnishee Northland Insurance Company's Motion for Summary Judgment (Doc. # 43), and (2) Northland's Motion to Strike and Preclude (Doc. # 53). The Motions have been fully briefed. (Docs. # 44, 45, 50, 51, 52, 54, and 55).

**I.      Summary of Relevant Facts[1]**

Northland issued consecutive "claims-made" Errors & Omissions Liability ("E&O") insurance policies to National Financial Systems, Inc. covering the policy periods from November 1, 2000 to November 1, 2002. (Docs. # 45-1 and 45-2). The first page of the policy states in all capitals that "A CLAIMS MADE POLICY … APPLIES ONLY TO ANY "CLAIMS" MADE DURING THE "POLICY PERIOD." (Doc. # 45-2 at 2).

---

[1] If facts are in dispute, they are stated in the manner most favorable to the non-movant, and all reasonable doubts about the facts have been resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox. v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994).

The policies provide:

> The Company will pay on behalf of an Insured all Loss from Claims *first made against an Insured during the Policy Period and reported* in accordance with SECTION G - GENERAL TERMS AND CONDITIONS, 2 and 3, Reporting and Notice, for Wrongful Acts committed on or after the Retroactive Date specified in Item 6 of the Declarations.

(Doc. # 45-2 at 9) (emphasis added). Under the Reporting and Notice Section of the General Terms and Conditions, the policy states:

> As a condition precedent to any rights an Insured may have under this Policy, an Insured shall give the Company, at the address specified in the Declarations, written notice of any Claim, as soon as practicable, after such Claim is first made, but in no event later than 15 days beyond the end of the Policy Period.

(Doc. # 45-1 at 20). The policy also contains a section entitled "EXTENDED REPORTING PERIOD," which, among other things, provides for an additional sixty (60) days to report a claim. (Doc. # 45-2 at 10). The policy also states that "Late notice will not invalidate a Claim if it was not reasonably possible to give notice sooner and notice was given as soon as possible." (Doc. # 45-1 at 9).

To fully analyze the issues in this case, it is necessary to review the history of two state court lawsuits ─ one filed by Attorney Jerry Lorant, of Lorant & Associates ("Attorney Lorant"), and the other filed by Attorney Penny D. Hays ("Attorney Hays"). Each case was filed in Jefferson County Circuit Court within five weeks of the other.

On August 1, 2001, Attorney Lorant filed a Complaint on behalf of Plaintiff Henry Nelson against various entities in the Circuit Court of Jefferson County, Alabama. (Doc. # 45-6). That Complaint alleged claims based on harassing debt collection techniques employed by Defendants. (*Id.*).

2

On September 4, 2001, Attorney Hays, a member of Alabama Injury Lawyers, filed a Complaint in a different case on behalf of Christy Pierce against the insured, National Financial Systems, Inc. ("NFS") in the Circuit Court for Jefferson County, Alabama.  (Doc. # 45-3).  That separate Complaint alleged claims based on harassing debt collection techniques employed by NFS.  (*Id.*).  Attorney Hays's address listed on the *Pierce* Complaint is 2204 Lakeshore Drive, *Suite 200*, Birmingham, AL 35209.  (Doc. # 45-3) (emphasis added).

On February 26, 2002, in the *Pierce* case, William Crowson, of the firm McDaniel, Bains & Norris, filed an Answer on behalf of his client, the insured NFS.  (Jefferson County Circuit Court Case No. CV-2001-005451.00; Doc. # 45-4).  At some point, Henry Nelson was disclosed as a witness in the *Pierce* case.  (Doc. # 44-7).

Shortly after NFS appeared in the *Pierce* case, on March 14, 2002, Henry Nelson through his counsel Attorney Lorant amended his Complaint in his own state court case to add NFS as a defendant.  (Doc. # 45-8).  Attorney Lorant's address listed on the *Nelson* Amended Complaint is listed as 2204 Lakeshore Drive, *Suite 200*, Birmingham, AL 35209.  (Doc. # 45-8) (emphasis added).

NFS did not respond to the *Nelson* Amended Complaint.  (Jefferson County Circuit Court Case No. CV-2001-005103.00).  On May 23, 2002, Plaintiff Nelson moved for default judgment against NFS.  (Doc. # 45-12).  On or about June 4, 2002, default judgment was entered against NFS.  (Doc. # 45-14).  NFS never notified the insurer, Defendant Northland, of Plaintiff Nelson's lawsuit or the claims asserted in the case.  (Doc. # 45-11).

On November 27, 2002, after NFS's original policy period expired, Attorney Lorant, listing himself on his correspondence as Of Counsel with Alabama Injury Lawyers (the same

3

firm that filed the *Pierce* case in which Crowson appeared on behalf of NFS), wrote to Maryland Attorney Ronald Jacobs.  (Attorney Lorant apparently discovered that Jacobs had, at some point, represented NFS).  Attorney Lorant's letter informed Jacobs that Nelson had received a judgment against NFS and that he intended to collect on the judgment.  (Docs. # 45-16, 51-1).  The letter to Jacobs did not request that Jacobs put NFS's insurance carrier on notice of the *Nelson* lawsuit, or ask for the identity of NFS's insurance carrier.  (Doc. # 51-5).  However, Attorney Lorant's Declaration filed in this case states that, in a telephone conversation with Jacobs, he told Jacobs he was "trying to collect the judgment and identify any available insurance coverage."  (Docs. # 51-1, 51-12 at 2).  Although Jacobs had represented NFS, he had no connection with Defendant Northland.  (Doc. # 45-16).

Attorney Lorant's Declaration states that, after his November 27, 2002 letter, Jacobs did not get back in touch with him, and he called Jacobs again without reply.  (Doc. # 51-12 at 2).  On or about December 3, 2002, Attorney Lorant sent Jacobs another letter enclosing his November 27, 2002 letter, as well as a copy of Nelson's certificate of judgment against NFS.  (Doc. # 51-2).  Again, the December 2, 2002 letter did not request that Jacobs put NFS's insurance carrier of notice of the *Nelson* lawsuit, or ask for the identity of NFS's insurance carrier.  (Doc. # 51-2).

Nelson has presented no evidence that he or Attorney Lorant ever (1) sought to inform Crowson (who represented NFS in the *Pierce* case in the same court in which the *Nelson* case was filed) of Nelson's claim and/or the default against NFS, or (2) request that Crowson put NFS's insurance carrier of notice of the lawsuit.  Again, significantly, the *Pierce* case was filed

4

out of the same office as the *Nelson* case, and Nelson was identified as a witness in the *Pierce* case. (Docs. # 45-3, 45-8, and 44-7).

Almost a year after the Northland policy period expired, on October 1, 2003, Attorney Lorant called and sent a fax to Dave Hagerty, an adjuster who is purported to be connected with Northland Insurance and with whom Attorney Lorant had previously settled cases. (Doc. # 51-12 at 3; Doc. # 45-17 at 3). Attorney Lorant's Declaration indicates that he told Hagerty that he was seeking insurance coverage to satisfy Nelson's judgment against NFS. (Doc. # 51-12 at 3). The Rule 56 record contains a fax cover sheet with a hand written notation indicating that it was directed to Dave Hagerty, but it does not list Hagerty's employer or contain the item that was faxed. (Doc. # 51-7).

In or around October 2003, the *Pierce* case, filed by Attorney Hays, was settled. Both NFS and Northland Insurance issued checks jointly to Christy Pierce and Charles (*not* Jerry) Lorant as her attorney. (Doc. # 44-5).

NFS never reported the *Nelson* case to Northland. (Doc. # 45-11 at 3). In fact, Northland did not learn of the *Nelson* case until November 16, 2004 -- over a year after the *Pierce* case settled -- when it received a telephone call from "Plaintiff's counsel." (Docs. # 45-11 and 45-18). On November 30, 2004, Northland wrote to NFS informing NFS that it had received notice of a potential claim. (Doc. # 45-19). That letter indicates that the attorney representing Nelson in the November 2004 communication with Northland was Penny Hays-Lorant (the Attorney Hays who filed the *Pierce* case). (Docs. # 45-3, 45-18 at 3, and 45-19). Apparently, NFS did not respond to Northland.

5

On July 12, 2007, over five years after the entry of the default judgment against it, and unbeknownst to Northland, NFS appeared in the state court *Nelson* action and moved to quash service of process and vacate the default judgment entered against it. (Doc. # 45-23). Even though NFS appeared in the underlying action at this time, it still failed to report the claim to Northland. (Doc. # 45-11 at 3).

On November 5, 2009, the Jefferson County Circuit Court denied NFS's Motion to Quash and Set Aside the Default Judgment. (Doc. # 45-24). On February 17, 2011, Plaintiff moved to renew his judgment against NFS. (Doc. # 45-27). The Jefferson County Circuit Court granted that Motion on February 23, 2011. (Doc. # 45-28).

The record contains no further evidence that Nelson or his counsel, Attorney Lorant, attempted to communicate with Northland regarding the judgment in the underlying action against NFS. Instead, on September 4, 2013, Nelson filed a Process of Garnishment in the Jefferson County Circuit Court, identifying Northland as a garnishee and seeking the total sum of $174,583 ($74,500 for the June 4, 2002 judgment; $253 in costs; and $99,830 in post-judgment interest). (Doc. # 45-29). The Jefferson County Circuit Clerk issued the Writ of Garnishment in the amount of $174,583 on September 11, 2013. (Doc. # 45-29). Northland did not learn of the Garnishment until January 6, 2014, when it received a copy of the Order of Conditional Judgment. (Doc. # 45-11 at 3). Northland removed this action to this court on January 17, 2014 (Doc. # 1), and filed an Answer stating that it was not indebted to NFS. (Doc. # 12). It also asserted a counterclaim for Declaratory Judgment alleging that is not obligated to NFS under the policies at issue. (*Id.*).

6

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the Rule requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *See id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be grated. *See id.*, at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v.*

*Liberty Lobby, Inc*. teaches, Rule 56(c) "does not allow the plaintiff to simply rest on [her] allegations made in the complaint; instead, as the party bearing the burden of proof of trial, [s]he must come forward with at least some evidence to support each element essential to [her] case at trial." *Anderson*, 477 U.S. at 252. "Mere allegations" made by a plaintiff are insufficient. *Id.*

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co*., 243 F. Supp.2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so onesided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp.2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc*., 62 F. Supp.2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear … that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

**III.   Analysis**

The issue presented by Defendant's Motion is whether the Northland policies issued to NFS provided coverage for the default judgment Nelson obtained against NFS. The parties appear to agree that New York law applies in this case. (Doc. # 44 at 17-18; Doc. # 51 at 16).

Alabama applies the law of *lex loci contractus* to the interpretation of insurance policies. *See, e.g., Cincinatti Ins. Co. v. Girod*, 570 So.2d 595 (Ala. 1990). Specifically, Alabama courts apply the law of the state where the policy was delivered or was issued for delivery. *Thompson v. Acceptance Ins. Co.*, 689 So.2d 89, 92 (Ala. Civ. App. 1996). The declarations page of the Policy indicates that the Policy was issued to "National Financial Systems, Inc." at its address at 6851 Jericho Turnpike in Syossett, New York. (Doc. # 45-1 at 1). The Policy also contains multiple New York endorsements. (Doc. # 45-2).

The policy at issue purports to cover the types of claim on which Nelson recovered against NFS. And Northland does not argue that the types of claims asserted by Nelson against NFS would not have been covered by the policy. Rather, the issue here is whether timely notice of the claim against NFS was given to Northland to trigger coverage under these claims-made-and-reported policies.

The court first notes that Plaintiff is entitled to seek recovery directly against NFS's insurer Northland based on its default judgment against NFS in state court pursuant to New York law. *Wadsworth v. Allied Professionals Ins. Co.*, 748 F.3d 100, 107-08 (2d Cir. 2014) (citing N.Y. Insurance Law § 3420(a)(2)). Section 3420(a)(2) allows an injured party with an unsatisfied judgment against an insured party to sue the insurer for satisfaction of the judgment in some circumstances. *Wadsworth*, 748 F.3d at 107-08; *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 174 (2d Cir.2010); *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 353-54, 787 N.Y.S.2d 211, 820 N.E.2d 855 (2004). "Although the statute does not increase the amount of the insurer's liabilities, the rights of the injured party are independent of the rights of the insured, and in some circumstances, more favorable." *See Wadsworth*, 748 F.3d at 107-08; *Cont'l Ins.*, 603 F.3d at

176 ("Th[e] separate standard, used to determine the reasonableness of the injured party's notice, is more lenient than the standard for the insured party's notice.").[2]

In order to recover an unsatisfied judgment from an insurer pursuant to Section 3420(a)(2), a plaintiff must show that he acted reasonably diligently in attempting to discover the identity of the defendant's insurer and thereafter "expeditiously" notified the insurer of the claim. *Golebiewski v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A*., 101 A.D.3d 1074, 1076, 958 N.Y.S.2d 161, 162 (2012); *Steinberg v. Hermitage Ins. Co*., 26 A.D.3d 426, 809 N.Y.S.2d 569 (2006). The reasonableness of a plaintiff's efforts to notify an insurer of a claim against its insured is "'measured by the diligence exercised by the injured party in light of the prospects afforded to him [or her] under the circumstances.'" *Nationwide Mut. Fire Ins. Co. v. Maitland*, 79 A.D.3d 1348, 1351, 915 N.Y.S.2d 180 (2010) (quoting *Jenkins v. Burgos*, 99 A.D.2d 217, 221, 472 N.Y.S.2d 373 (1984)).

An illustration of what constitutes such diligence is instructive. In *McCabe v. St. Paul Fire & Marine Ins. Co*., the plaintiffs brought an action against their former attorney David E. Fretz's legal malpractice insurer, seeking coverage under attorney's policy for the default judgment they had obtained against Fretz for his alleged malpractice. *McCabe,* 25 Misc. 3d 726, 884 N.Y.S.2d 634 (Sup. Ct. 2009), *aff'd*, 79 A.D.3d 1612, 914 N.Y.S.2d 814 (4th Dept. 2010). Fretz had a claims-made-and-reported policy issued by defendant St. Paul Fire and Marine Insurance Company. *McCabe*, 25 Misc. 3d at 728, 884 N.Y.S.2d at 635. Fretz had failed to give his malpractice insurer notice of the claim against him. *Id.*

---

[2] There is some question about whether a writ of garnishment was the appropriate vehicle for this dispute. *See Ex Parte Safeway Insurance Company of Alabama*, 679 So.2d 699 (Ala. 1996) (Maddox, J., dissenting) (questioning whether a plaintiff who obtained a default judgment against an insured proved that the insurer was indebted to the insured where there was a dispute about whether the insurer received proper notice of the claim).

Prior to even filing the claim against Fretz, on March 2, 2007, the McCabes' new lawyer, Doyle, sent Fretz a certified letter at his listed law office, demanding to know the identity of his malpractice insurance carrier or carriers and asking Fretz to place it or them on notice of a potential claim against him. *McCabe*, 25 Misc. 3d at 730, 884 N.Y.S.2d at 637. On March 26, 2007, Doyle sent a second certified letter to Fretz at his home, again seeking the identity of his malpractice insurer, in order that Doyle himself might provide notice to the insurer and thereby avoid any prospect of disclaimer due to lack of notice. *Id.* On April 9, 2007, Doyle sent a third certified letter to Fretz's home, proclaiming it "absolutely imperative" that Fretz supply Doyle with the name of Fretz's insurer. *Id.* On April 24, 2007, Doyle sent a fourth certified letter to Fretz, again pointing out that it was "imperative" for Fretz to forward the summons and complaint to his malpractice insurer. *Id.* That correspondence again reiterated plaintiffs' desire to independently provide the carrier with notice, and again seeking the identity of the insurer for that purpose. *Id.* On May 8, 2007, Doyle sent a fifth certified letter to Fretz' home, once again "pleading" with Fretz to provide Doyle with the identity of the malpractice insurer so that appropriate notice could be given. *Id.* On May 23, 2007, the McCabes moved the court for an order directing Fretz to provide his insurance information to plaintiffs. *Id.* During this period, Doyle also made unsuccessful attempts to contact Fretz by telephone. *Id.* Thus, in *McCabe*, during an approximate five-month period, the plaintiffs' attorney sent five letters to addresses believed to be the work and home address of the defendant demanding the identity of his insurer for the purpose of effecting notice to the insurer, made additional calls, and filed a motion with the court seeking that information. *Id.* Based on these facts, the court found as a matter of law that the plaintiffs had "acted diligently in an attempt to garner the relevant insurance information

11

from Fretz. *McCabe*, 25 Misc. 3d at 738, 884 N.Y.S.2d at 643(citing *American Continental Props., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 200 A.D.2d 443, 446, 608 N.Y.S.2d 807 (1994)).

In contrast, here, there is no evidence of any correspondence to NFS via its registered agent for service of process or at any other address requesting the identity of its insurer. In fact, Plaintiffs have presented no evidence of any correspondence to NFS explicitly seeking information regarding the identity of its insurer for purposes of providing notice. Rather, the correspondence contained in the Rule 56 record indicates that counsel sought to collect the judgment directly from NFS. (Docs. # 1-1 and 51-2).

Interestingly, the correspondence in the record from Attorney Lorant to Jacobs from 2002 identifies Attorney Lorant as "Of Counsel" with Alabama Injury Lawyers. (Docs. # 1-1 and 51-2). Alabama Injury Lawyers is the law firm that filed the *Pierce* matter in which Crowson appeared on behalf of NFS. (Docs. #45-3 and 45-4). There is no evidence of any communication with Crowson on behalf of Nelson seeking the identity of NFS's insurer. It is also significant that Attorney Lorant was able to identify a Federal Trade Commission lawsuit and an attorney in Maryland, but not a lawsuit in which his own client had been identified as a witness, and which was filed by a firm with which he had an "Of Counsel" relationship. Had anyone on behalf of Plaintiff checked the files of Alabama Injury Lawyers, or even the court records for the Circuit Court of Jefferson County, Alabama, the *Pierce* case -- a case in which Plaintiff was identified as a witness and in which a lawyer who represented NFS at that same time had appeared -- would have been revealed.

It was not until over a year after the *Pierce* case was settled -- and after settlement checks were issued by Northland to Pierce and her attorney, Charles Lorant -- that Penny Hays-Lorant (the lawyer who filed the *Pierce* case) contacted Northland about the *Nelson* case on this record and under these circumstances, the court cannot say that Plaintiff exercised reasonable diligence in attempting to discover the identity of NFS's insurer and thereafter "expeditiously" provided notice of their claim to Northland.  *See Golebiewski*, 101 A.D.3d at 1076, 958 N.Y.S.2d at 162; *McCabe*, 25 Misc. 3d at 738, 884 N.Y.S.2d at 643.

Finally, although the Rule 56 record reflects a 2004 telephone call from Penny Hays-Lorant to Northland regarding Nelson's case, there is no *written* notice to Northland in evidence in the record.  The court notes that there is legal precedent holding that the New York statute at issue requires *written* notice to the insurer, whether by the insured or by the injured party. *Maryland Cas. Co. v. Efficient Sols., Inc.*, 2013 WL 885164, at *8 (W.D. N.Y. 2013), report and recommendation adopted, 2013 WL 902985 (W.D. N.Y. 2013); *Jenkins v. Burgos*, 99 A.D.2d 217, 472 N.Y.S.2d 373, 377 (App. Div. 1984) (citing *Allstate Ins. Co. v. Furman*, 84 A.D.2d 29, 445 N.Y.S.2d 236 (App. Div. 1981), *aff'd*, 58 N.Y.2d 613, 458 N.Y.S.2d 532, 444 N.E.2d 996 (N.Y. 1982)); *see also Bazar v. Great Amer. Ind. Co.*, 306 N.Y. 481, 119 N.E.2d 346, 349–350 (N.Y. 1954); *Pitts v. The Aetna Cas. & Sur. Co.*, 218 F.2d 58, 61 (2d Cir. 1954).  The evidence in the record shows only a telephone call (Doc. $ 45-11 at 3; Doc. # 45-18 at 4; Docs. # 45-19 and 45-21), but a phone call fails to comply with the requirement that the notice be in writing.

## IV.     Conclusion

For all of these reasons, Northland Insurance Company's Motion for Summary Judgment (Doc. # 43) is due to be granted. In light of that conclusion, Northland's Motion to Strike and Preclude (Doc. # 53) is deemed moot. A separate order will be granted.

**DONE** and **ORDERED** this July 12, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE